HUMPHRIES *v.* REED PHOSPHATE CO. *et al.*[*]

(Division B.  Nov. 24, 1924.)

[101 So. 705.  No. 24206.]

MASTER AND SERVANT.  *Contract held not hiring for year.*

A contract for employment by correspondence, wherein it is stated:
"We are basing your salary on a selling cost of one dollar per ton.
.  .  .  This proposition, of course, is predicated on your re-
maining with us twelve months.  We never employ any one
on a yearly contract.  However, we are not taking you with us
anticipating only a season's work.  We trust that your con-
nection with us will be pleasant and profitable for us both, which
will enable us to have you with us indefinitely"—followed in a
subsequent letter by a statement fixing a drawing account at
two hundred dollars per month and necessary money to cover ex-
penses, and that "at the end of our fiscal year, or May 31st,
we will figure the selling cost basis of one dollar per ton, and
if we are due you a bonus, it will be our pleasure to hand you a
check to cover the amount," do not constitute a hiring for a year,

but is based upon the selling cost of one dollar per ton for sales made, and the salesman may be discharged at the end of the selling season without breach of the contract.

*Headnote 1.   Master and Servant, 26 Cyc, p. 972.

APPEAL from chancery court of Lowndes county.

HON. T. P. GUYTON, Chancellor.

Action by John W. Humphries against the Reed Phosphate Company and others. From a judgment foo defendants, plaintiff appeals. Affirmed.

*Jno. F. Frierson,* for appellant.

*Owen & Garnett,* for appellees.

Our view of the case can be presented under two heads: First, the contract sued on was not from year to year; second, the contract sued on was indefinite as to duration, and could be terminated by either party, at any time; certainly at the end of the usual season for selling fertilizer, if not before. *Myers* v. *Walker,* 24 Ill. 133, holds that the word "season" in a contract employing plaintiff to purchase and deliver corn during the coming season would be construed to be used in reference to the period within which it is customary to purchase corn at the place where plaintiff was employed, and it would be presumed that the meaning of the term was well known in such locality.

Among the definitions of "only" given in Webster's International Dictionary, is "one alone," and that is the sense in which it is used in appellee's letter to appellant dated October 23, 1917, where reference is made to "only a season work," and hope is expressed that the relation would be "pleasant and profitable" to both parties, so appellee would be enabled to have appellant in its employ "indefinitely."

An agreement to serve and be served at so much per month, with no stipulation as to the term of service, is determinable at the end of any month, at the pleasure of

either party to the contract. *Clark* v. *Ryan,* 11 So. 22, 33; *Howard* v. *Ry. Co.,* 8 So. 868; 20 A. & E. Ency. of Law (2 Ed.), 15; 1 Labatt on Master & Servant (2d Ed.), 533; 1 Labatt on Master & Servant (2 Ed.), 516; *Martin* v. *N. Y. Life Ins. Co.,* 42 N. E. 416.

In line with the doctrine announced by Wood on Master and Servant as quoted and approved by the court of appeals of New York in the Martin case, are the following authorities: *Greer* v. *Arlington Mills Mfg. Co.,* 1 Penn. 581; *Savannah F. & W. R. Co.* v. *Willett* (Fla.), 31 So. 246; *Morris, T. & Co.* v. *Agnew,* 57 Ill. App. 229; *Speeder Cycle Co.* v. *Teeter* (Ind. App.), 48 N. E. 495; *McCullough Iron Co.* v. *Carpenter* (Md.), 11 Atl. 176; *Evans* v. *Railway Co.,* 24 Mo. App. 114; *Finger* v. *Brewing Co.,* 13 Mo. App. 310; *De Briar* v. *Minturn,* 1 Cal. 450; *Haney* v. *Caldwell,* 35 Ark. 156, 168; *Prentiss* v. *Ledyard,* 28 Wis. 131.

Under a contract for hiring for a definite term provided the services are satisfactory to the master, he has the absolute right, whenever he becomes in good faith dissatisfied with the services of the employee, to discharge him. 20 A. & E. Ency. of Law, 15.

ETHRIDGE, J., delivered the opinion of the court.

Suit was brought by the appellant against the appellee for a balance claimed on the salary during the year 1920. The correspondence by which the contract was consummated originally, is as follows:

"October 23, 1917.

"Mr. John W. Humphries, Columbus, Mississippi— Dear Sir: This is to confirm our verbal offer made you to-day to come with us November 1st to work Arkansas, at a salary of one hundred and fifty dollars per month and traveling expenses.

"We are basing your salary on a selling cost of one dollar per ton. To illustrate, if you should draw in

twelve months one thousand eight hundred dollars and your expense account shows one thousand two hundred dollars, which would make your total expense three thousand dollars, we should except three thousand tons of bagged business to cover this expense. On the other hand, if you should get more than three thousand tons, then we will be due you a commission or bonus of one dollar per ton on all tonnage over this amount, three thousand tons.

"This proposition, of course, is predicated on your remaining with us twelve months. We never employ any one on a yearly contract. However, we are not taking you with us anticipating only a season's work. We trust that your connection with us will be pleasant and profitable for us both, which will enable us to have you with us indefinitely.

"Assuring you that it is our pleasure to have you with us, and that we will do everything in our power to make you one of our satisfied employees, we are,
Yours very truly,
                    "J. S. Campbell, Sales Manager."
                              "Sept. 10, 1919.

"Mr. John W. Humphries, Columbus, Miss.—Dear Sir: Answering your letter of the 5th, I feel under anything like normal conditions in Arkansas another year, and with an even break of luck, you will make yourself worth to us a salary drawing account of two hundred dollars per month and the necessary money to cover your expenses. We want your salary to make you at least comfortable, so it will be our pleasure to meet your views and make your salary check, beginning this month two hundred dollars. At the end of our fiscal year, or May 31st, we will figure the selling cost basis of $1 per ton, and if we are due you a bonus, it will be our pleasure to hand you a check to cover the amount.

"Yours very truly,
"JSC.C                         J. S. Campbell, Mgr."

"October 21, 1918.

"Mr. John W. Humphreys, Columbus, Miss.—Dear Sir: To-day closing your first year's work with us, it is our pleasure to hand you two checks for one hundred fifty dollars representing your regular monthly drawing account for one hundred fifty dollars, the second check for seven hundred eighty-two dollars and fifty cents, which represents the bonus salary due you on your year's work, which has been most satisfactory to us. Since we have charged all expense checks to you, any expense money you might have on hand belongs to you.

"It has been a pleasure to have you with us, and we trust that you will accept our offer to continue you with us on basis of the same working arrangements another year. We are also inclosing a statement showing tonnage shipped into your territory, and expense and salary checks advanced the past year.

"Without knowing for sure, we believe that other manufacturers will start working the spring trade earlier than usual. We will write you more definitely about this within the next few days. If you have any suggestions to make in reference to the most effective way to go after spring business in the territory you have in charge, we will be glad to hear from you.

"Yours very truly,

"J. S. CAMPBELL, Mgr."

The contention of the appellant is that the letters in 1919 constituted a contract for the entire year at a salary of two hundred dollars per month, while it is the contention of the appellee that the contract was not by the year, but was based upon a selling cost of one dollar per ton for bag fertilizer sold by the appellant to the trade for the appellee, and that the two hundred dollars was to be paid only from the sales made as explained in the original letter. The sale season ran from the 1st of November to about the 1st or middle of April each year,

and in the years 1917, 1918, and 1919, the appellant earned by his sales a bonus above the salary and expenses. But in 1920 the appellant was taken ill with influenza, and his health impaired as shown by other correspondence, and the sales made by him for that season were less than the salary and expenses advanced to him up to May 31, 1920. At the close of the season of 1919-1920, on the 8th of April, 1920, the appellee wrote appellant as follows:

"Mr. John W. Humphries, Little Rock, Arkansas— Dear Sir: As requested in your letter of the 7th, we are enclosing expense check. We are not expecting any more business from Arkansas, as we have thought all along if we failed to get orders from the territory early in the season, we would not have a chance to do much business in the territory. . . .

"I appreciate that your health prevented you from putting up a fight for business in Arkansas this season. If you had been in real good form I believe you would have gotten enough business to have justified the expenses we have been put to. As you know, we estimated our selling cost in Arkansas not to exceed one dollar per ton. It looks as if the expense will be about two dollars per ton, which is more than we can afford.

"We will carry you along on our expense sheet until June 1st, which is the beginning of a new year with us, and before we determine on some one to represent us in Arkansas next season, we will get in touch with you and find out if you have regained your health, and want to come with us again.

"Personally I am very much attached to you, and trust that a few months out west will make you as good as new.

"Yours very truly,

"J. S. CAMPBELL, Manager."

After the 1st of June, 1920, no further payments were made to appellant, and his contention was that his contract under the above correspondence obligated the appel-

lee to pay him the two hundred dollars a month salary until the 1st of November. The court below held that the appellant was not entitled to the amount sued for.

We think it is manifest from the correspondence that the arrangement was that the appellant, as salesman for the appellee, would be allowed one dollar per ton on the amount sold, and out of this one dollar per ton his salary and expenses would be deducted, and that he would be entitled to one dollar per ton on tonnage above the salary drawn and the traveling expenses advanced. We think that both parties must be held to have understood that this was the arrangement, and that the correspondence shows that the two hundred dollars per month was a drawing account against his earnings or commissions.

It follows that the judgment of the court below must be affirmed.

*Affirmed.*